**ROBERTSON TANK LINES, INC.,**
Appellant,

v.

**Catherine Waguespack POPE,**
a Feme Sole, Appellee.

No. 14590.

Court of Civil Appeals of Texas.

Houston.

May 5, 1966.

Rehearing Denied May 26, 1966.

Tom Alexander, Houston, for appellant, and Quinnan H. Hodges, Jonathan Day, Butler, Binion, Rice, Cook & Knapp, Houston, of counsel.

Peyton & Peyton, Allie L. Peyton and George C. Peyton, Houston, for appellee.

COLEMAN, Justice.

This is a suit for damages by reason of injuries sustained in a collision between a loaded tank truck and a taxicab in which appellee was a passenger. The jury awarded damages in the sum of $100,000.00. The only point of error assigned is that this award is excessive.

Appellee and another passenger were riding in the back seat of a taxicab on the East-Tex Freeway. The cab was driven past the intended exit and was in the process of backing up when it was struck from the rear by the loaded tractor truck. The driver and a passenger died as a result of the injuries they received. The force of the impact drove appellee's feet through the floor board of the car and she was pinned in the wreckage for a period of time after the

collision. She was in a state of shock for several days and her condition was critical. X-rays taken immediately after the accident revealed that appellee had suffered a fracture of the fibia of the right leg, a fracture of the right forearm, fractures of a bone in the left ankle, and of two bones in the right ankle. She also suffered a fractured collarbone, thirteen fractured ribs, a severe brain concussion, and a fracture of the third transverse process of the lumbar vertebra.

Dr. James A. Brown, a neuro-surgeon, was called to Jefferson Davis Hospital to treat her and removed her to another hospital. He called in Dr. E. J. Tucker, an orthopedic surgeon, the following day. Dr. Tucker testified that when he first examined her she was suffering from severe shock and was in a coma. Her face was swollen and she had multiple injuries about the head. Her right foot was full of dirt and gravel and was turning black. The arteries that went to the outside and to the toes of the foot were torn and gangrene had set in.

Dr. F. H. Tyner, a radiologist, x-rayed appellee on the day of the accident for examination of her dorsal and lumbar vertebra and ribs. He found a curvature of the dorsal spine, a reversal of the normal curvature of the cervical spine and evidence of arthritis.

She was hospitalized from November 8, 1961, to December 20, 1961. On November 24, 1961, Dr. Tucker performed a surgical operation on her right foot by removing most of the forefoot and as much of the dead skin as he could off the rest of the foot. On January 9, 1962, Dr. Tucker performed a skin graft on the foot. Appellee was in the hospital at this time about a week and thereafter used a wheelchair for about two months. She was discharged by Dr. Tucker on May 1, 1962, but returned on July 3, 1962, complaining of pain in her cervical spine, referred to her arm, and pain in her back, referred to knees and legs, and swelling of the right foot and ankle. He had additional x-rays made and referred her back to Dr. Brown for a neurological examination.

Dr. Tucker testified that the amputation of the fore part of her foot caused her to limp and walk with a "lag", and that her foot was tender where the skin graft was performed. He examined the x-rays taken by Dr. Tyner at his request. He found early arthritic changes in the lumbar spine and hyperextension of the lordotic curve. He found a slight reversal of the lordotic curve of the cervical spine, and some degeneration of a disc and early arthritic changes. He testified that the conditions he found were probably caused by the accident. He testified that her disc trouble and the foot condition were permanent conditions, and were disabling, and that she was not a fit subject for a full-time job. He also testified that his examination of the x-rays revealed a condition of moderate osteoporosis, a thinning of the bone; that such a condition can be caused by trauma, but is more commonly caused by the inactivity resulting from trauma; and that this condition would cause symptoms; that the condition increases gradually from year to year. He testified that the degeneration of a disc was not normal; that injury to, or disease of, the adjacent bones was the common cause of that condition. It was stipulated that Dr. Tucker was qualified to testify as an expert in the field of orthopedics.

Dr. Brown testified to the condition of appellee at the time he undertook her treatment and to the injuries she sustained in the collision. He expressed an opinion that at the time of the trial she continued to suffer from a herniated intervertebral disc, the loss of part of her foot, arthritis of the neck and shoulder aggravated by the injuries received in the collision, loss of her sense of smell and periodic dizzy spells resulting from a brain concussion, and that she was nervous and depressed. He testified that these and other injuries had caused appellee to suffer pain up to the date of trial. It was his opinion that these conditions were probably permanent and would

cause pain and disability for the remainder of her life.

Appellee testified to pain, suffering and disability, as did several lay witnesses. Well qualified medical men, basing their opinions on the hospital records, report, results of examinations and tests, x-ray reports and films and other testimony, concluded that there was no permanent disability resulting from the back injury.

Appellee had a life expectancy in excess of 29 years. Prior to the trial she had incurred medical expenses of $3,875.00, and had lost wages in the sum of $3,240.00. In addition to a full-time job, appellee worked each night in a lounge owned by her and her purported husband. She testified that she had invested some of her funds in the business and that most of the profit realized from its operation was placed back in the business. The jury might reasonably have allowed some sum of money for earnings she would have realized from the lounge to the date of the trial. Certainly, they had a right to consider her demonstrated willingness to hold two jobs at the same time in considering her diminished capacity to work and earn money in the future.

Appellant has calculated appellee's loss of future earnings on the basis of a twenty year work life and a $270.00 monthly income using a six percent interest factor and arrived at a figure of $37,162.00. Obviously the figure would be much greater if such factors as income from a second job and probable increases in pay were considered. Considering the testimony of appellee's previous health record, as well as the testimony as to her capacity for work and her willingness to work, the use of a longer work life than twenty years would not be unreasonable. An interest factor of four percent might well have been used considering the interest rate prevalent at the time of trial for safe investment. Considering the testimony concerning the pain and suffering of appellee prior to the trial and the probability of such suffering in the future we are not disposed to hold

that the verdict rendered by the jury exceeds a rational appraisal and estimate of the damage suffered by appellee.

The judgment of the trial court is affirmed.